**Dated: June 30, 2020**

**The following is ORDERED:**



Sarah A Hall
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SAMUEL LEE CRILLY and | ) | Case No. 20-11637-SAH |
| KIMBERLY DEANE CRILLY, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | |

**ORDER DENYING MOTION FOR CONTINUATION OF AUTOMATIC STAY WITH BRIEF COMBINED WITH NOTICE OF OPPORTUNITY FOR HEARING [DOC. 11]**

On June 10, 2020, this Court heard the Motion for Continuation of Automatic Stay with Brief Combined with Notice of Opportunity for Hearing [Doc. 11], filed on May 14, 2020 (the "Motion"), by debtors Samuel Lee Crilly and Kimberly Deane Crilly ("Debtors"), in their second chapter 11 case to pend this calendar year (the "Second Case"). Their previous chapter 11 case, Case No. 18-13849 (the "First Case"), was dismissed by agreement of the parties on May 13, 2020, for cause pursuant to 11 U.S.C. § 1112(b). A few hours after the dismissal, Debtors filed the Second Case under the recent amendments to the Bankruptcy Code made by the Small Business Reorganization Act of 2019, which became effective on February 19, 2020 (the "SBRA"). SBRA was designed "to broaden the opportunity for small businesses to successfully

utilize the benefits of chapter 11" and created subchapter V to chapter 11 for "small business debtors." In re Ventura, 615 B.R. 1, 6 (Bankr. E.D. N.Y. 2020).

Because Debtors had a prior bankruptcy case pending during the year preceding the filing of this bankruptcy case that was dismissed, the automatic stay of 11 U.S.C. § 362(a) terminates thirty days after the filing of the Second Case.  The automatic stay can be extended by the Court on the motion of a party in interest provided such party establishes the filing of the second case was in good faith as to the creditors to be stayed.  11 U.S.C. § 362(c)(3).  Accordingly, Debtors filed the Motion seeking a continuation of the automatic stay, arguing the Second Case was filed in good faith.  Both the United States Trustee ("UST") and creditors Rita Jacks and Joe Jacks (the "Jacks") objected to the Motion, claiming the Second Case was filed in bad faith.[1]

## Findings of Fact

Having presided over the First Case and an associated adversary proceeding, the Court is more than familiar with the background facts and takes judicial notice[2] of the First Case and matters filed and determined therein.

1.     Rita Jacks is the mother of debtor Samuel Crilly.

---

[1]See Objection of the United States Trustee to Debtors' Motion for Continuation of the Automatic Stay [Doc. 25], filed on May 28, 2020, by UST; Creditors Rita and Joe Jacks' Response and Objection to the Motion for Continuation of Automatic Stay with Brief in Support and Certificate of Service [Doc. 24], filed on May 28, 2020, by the Jacks.

[2]It is well established that a court may take judicial notice of its own records as well as records of other courts, particularly in closely related cases.  Hutchinson v. Hahn, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)); Cornforth v. Fidelity Inv., 2017 WL 650132 (W.D. Okla. 2017).

2.    The Jacks financed the build-out and completion of the second floor of Debtors' residence (the "Second Floor") for the purpose of providing the Jacks with a home as they aged. The Jacks lived in the Second Floor only briefly until Debtors removed them.

3.    Thereafter, the Jacks filed a state court action against Debtors, Case No. CJ-2017-1075, Cleveland County District Court, State of Oklahoma (the "State Court Action").[3]

4.    Following the Jacks' departure, debtor Kimberly Crilly's father moved in and lived in the Second Floor. After his death, Debtors did not have renters for the Second Floor until late 2018. After the commencement of the First Case in October 2018, they began to regularly have renters for the Second Floor.

5.    The Jacks obtained a judgment against Debtors in the State Court Action for $400,000.00 ($200,000.00 in actual damages and $200,000.00 in punitive damages) plus post-judgment interest, and were later awarded $61,650.00 in attorneys' fees and costs of $3,591.03 in the State Court Action (collectively, the "Judgment"). State Court Action Docket generally; UST Exhibit 16. Debtors subsequently appealed the Judgment.

6.    On September 12, 2018, Debtors filed the First Case. Docket in Case No. 18-13849.

7.    Debtors did not identify any leases, renters, or rental income for the Second Floor in their Schedules in the First Case.

8.    Debtors did not identify themselves as a sole proprietor of any full or part-time business in the First Case nor did they claim to be a small business debtor in the First Case. UST Ex. 7, p. 4, questions 12 and 13.

---

[3]Federal courts may take judicial notice of proceedings in other courts if those proceedings have a direct relation to the matters at issue. St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979).

9.      Debtors also did not identify any income from operating a business for calendar years 2016 and 2017 and for January 1 through September 12, 2018.  UST Ex. 7, pp. 35-36, question 4.

10.     Further, Debtors did not identify any business or connection to any business involving the rental of the Second Floor of their residence in the First Case.  UST Exhibit 7, p. 41, question 27.

11.     Debtors filed a motion for relief from the automatic stay to continue their appeal of the Judgment (the "Debtors Stay Motion").  First Case Doc. 14.

12.     The Jacks also filed a motion for relief from the automatic stay to proceed with their motion for allowance of attorneys' fees and costs in the State Court Action (the "Jacks Stay Motion").  First Case Doc. 25.

13.     On October 12, 2018, Debtors filed their plan and disclosure statement in the First Case. First Case Doc. 44 & 45.  A first amended plan was filed on October 15, 2018, to correct the absence of Debtors' signatures.  First Case Doc. 51.

14.     The Court entered orders granting the Debtors Stay Motion and the Jacks Stay Motion on October 22, 2018.  First Case Doc. 58 & 59.

15.     On November 16, 2018, Debtors filed a second amended plan and first amended disclosure statement.  First Case Doc. 72 & 73.

16.     On December 13, 2018, an order was entered in the State Court Action requiring Debtors to post a $530,482.00 appeal bond within twenty days after conclusion of the First Case. UST Exhibit 16.

-4-

17.  The Court held multiple hearings on January 3, 2019, including a hearing on the Jacks' objection to Debtors' claimed exemption in two retirement accounts, which were inherited by joint debtor Kimberly Crilly from her deceased father (the "Inherited IRAs"). The Jacks' objection was sustained, and the exemption in the Inherited IRAs was denied. First Case Doc. 103.

18.  The Court also held a hearing on approval of Debtors' first amended disclosure statement on January 3, 2019. However, because the Court's denial of Debtors' claimed exemption with respect to the Inherited IRAs significantly changed the liquidation analysis in the disclosure statement, the first amended disclosure statement and second amended plan required further amendments. Consequently, approval of the disclosure statement was denied. First Case Doc. 103.

19.  Debtors filed their third amended plan and second amended disclosure statement on February 25, 2019. First Case Doc. 116 & 117.

20.  On February 27, 2019, the Court conducted a status conference and discovered that the second amended disclosure statement lacked important information, the third amended plan lacked feasibility, and the plan was not confirmable on its face based on violations of the absolute priority rule. Debtors were, therefore, directed to file a third amended disclosure statement and a fourth amended plan no later than March 14, 2019. First Case Doc. 118.

21.  At Debtors' request, the Court extended the time for the fourth amended plan and third amended disclosure statement to be filed to April 4, 2019. First Case Doc. 120.

22.   On April 4, 2019, Debtors filed their third amended disclosure statement and fourth
amended plan.  First Case Doc. 123 & 124.

23.   A hearing was held on May 22, 2019, to consider approval of the third amended
disclosure statement.  The Court denied approval based on inadequate information
regarding feasibility and failure to comply with the absolute priority rule.  The Court
cautioned Debtors to carefully consider and provide for satisfaction of the absolute
priority rule in any future plan and disclosure statement.  First Case Doc. 131.

24.   Additionally, at the May 22, 2019, hearing, it was brought to the Court's attention that, in
the Monthly Operating Report for March 2019 [First Case Doc. 129], filed on May 10,
2019, Debtors identified $37,059.00 received from the Inherited IRAs in their personal
cash receipts for March 2019, possibly to pay attorney fees (based on a designation
therein).  As a consequence, Debtors were directed to immediately remit the $37,059.00
withdrawn from the Inherited IRAs to their counsel to be held in his trust account pending
further order of the Court.  Debtors were further instructed to take no further voluntary
withdrawals from their Inherited IRAs without prior Court approval.  Additionally,
Debtors were directed to immediately remit all prior and future required minimum
distributions received from the Inherited IRAs on account of applicable federal law to
their counsel to be held in his trust account pending further order of the Court.  First Case
Doc. 131.

25.   The Court subsequently entered an order setting a July 17, 2019, deadline for Debtors to
file their fifth amended plan and fourth disclosure statement complying with the absolute

priority rule and containing adequate financial projections for a feasibility analysis. First Case Doc. 135.

26.    Debtors filed their fourth amended disclosure statement and fifth amended plan on July 17, 2019. First Case Doc. 138, 139 & 141.

27.    On September 4, 2019, the fourth amended disclosure statement was approved. First Case Doc. 152 & 153.

28.    The confirmation hearing on the fifth amended plan was held on October 17, 2019, and confirmation was denied based on lack of feasibility and failure to satisfy the absolute priority rule. First Case Doc. 163 & 165.

29.    A status conference was held on December 4, 2019, and the Court set a deadline of December 9, 2019, for Debtors to file a plan demonstrating feasibility and compliance with the absolute priority rule. First Case Doc. 172.

30.    Debtors filed their sixth amended plan and fifth amended disclosure statement on December 9, 2019, First Case Doc. 173 & 174.

31.    On January 10, 2020, the Court entered an order approving the fifth amended disclosure statement and setting the hearing on confirmation of the sixth amended plan. First Case Doc. 182.

32.    On February 19, 2020, the confirmation hearing on the sixth amended plan was held. The Jacks' objection to confirmation was sustained, and confirmation was denied because of the lack of feasibility and good faith based on distributions taken from the Inherited IRAs in violation of this Court's previous orders (as discovered at the confirmation hearing).

The Court ordered the distributions be immediately paid over to Debtors' counsel to be put in trust.  First Case Doc. 193.

33.   An order denying confirmation was entered on February 21, 2020, and UST filed a motion to dismiss the First Case for cause under 11 U.S.C. § 1112(b) (the "Dismissal Motion") on the same day.  First Case Doc. 194 & 195.

34.   The Jacks supported the Dismissal Motion, and Debtors objected.  A hearing on the Dismissal Motion was scheduled for May 13, 2020.  First Case Doc. 194, 201 & 203.

35.   The day before the scheduled hearing, Debtors paid their counsel, David Sisson ("Sisson"), $3,000.00 in attorneys' fees and $1,717.00 for the filing fee for the Second Case.  Sisson accepted the $4,717.00 payment prior to dismissal of the First Case and without Court authorization.  UST Exhibit 4, p. 65, question 16.

36.   Just prior to the Dismissal Motion hearing, the parties agreed to dismiss the First Case for cause, and an agreed order was entered on May 13, 2020, at 11:31 a.m.  First Case Doc. 218.

37.   Debtors then paid Sisson an additional $47,783.63 on May 13, 2020, for attorneys' fees incurred in the First Case, again without Court authorization or allowance.  UST Exhibit 4, p. 66, question 16.

38.   At 4:49 p.m. on May 13, 2020 (the "Petition Date"), Debtors filed the Second Case under subchapter V of chapter 11 of the Bankruptcy Code.  Second Case Doc. 1.

39.   On May 14, 2020, Debtors filed the Motion seeking a continuation of the automatic stay pursuant to Section 362(c)(3).  Debtors claim their Second Case was filed in good faith to

-8-

take advantage of the provisions of subchapter V of chapter 11 and believe that a plan can be confirmed.  Second Case Doc. 11.

40.  However, at the hearing on the Motion, Debtors testified there was no substantial change in their circumstances between dismissal of the First Case and the filing of the Second Case.

41.  Stephen J. Moriarty, the standing subchapter V trustee (the "Trustee") appointed in this case (UST Exhibit 6), also testified that Debtors had no change in their financial circumstances between the dismissal of the First Case and the filing of the Second Case. The Trustee does not have high hopes for achieving a consensual plan in the Second Case.

## Pertinent Statutory Provision

11 U.S.C. § 362(c)(3) provides as follows:

c) Except as provided in subsections (d), (e), (f), and (h) of this section--

(3) if a single or joint case is filed by or against a debtor who is an individual in a case under chapter 7, 11, or 13, and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b)--

(A) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

(B) on the motion of a party in interest for continuation of the automatic stay and upon notice and a hearing, the court may extend the stay in particular cases as to any or all creditors (subject to such conditions or limitations as the court may then impose) after notice and a hearing completed before the expiration of the 30-day period **only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed**; and

(C) for purposes of subparagraph (B), **a case is presumptively filed not in good faith** (but such presumption may be rebutted by clear and convincing evidence to the contrary)--

(i) as to all creditors, if–

. . .

(III) **there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded**–

. . .

(bb) **if a case under chapter 11 or 13, with a confirmed plan that will be fully performed**; and

(ii) **as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor**.

11 U.S.C.A. § 362 (emphasis added).

### Legal Conclusions

Debtors ask the Court to extend the stay by finding the Second Case was filed in good faith, or the Second Case was not filed presumptively in bad faith. Debtors Reply, p. 2, paragraph 4. For the reasons set forth below, the Court denies Debtors' request. A presumption of bad faith in filing the Second Case arises, and Debtors have not successfully rebutted such presumption. Thus, the automatic stay will not be extended beyond thirty days after the Petition Date.

-10-

## I.     A PRESUMPTION OF BAD FAITH EXISTS AS TO ALL CREDITORS.

Where a debtor had a prior bankruptcy case pending during the last year that was dismissed prior to the filing of a second bankruptcy case, the automatic stay will be limited to thirty days after the petition date in the second case unless a party files a motion seeking an extension of the stay based on the second case being filed in good faith as to creditors to be stayed.  In re Cox, 2017 WL 3447116 (Bankr. E.D. Okla. 2017).  To determine whether the Second Case was filed in good faith, the Court first looks at whether a presumption of bad faith arises.  If so, Debtors must rebut the presumption by clear and convincing evidence.

Under Section 362(c)(3)(C)(i)(III), a presumption of bad faith arises as to all creditors if there has not been a substantial change in the debtor's financial or personal affairs since dismissal of debtor's previous bankruptcy case or if there is any other reason to assume the new case will not conclude with a confirmed plan that can be fully performed.  In re Fisher, 2018 WL 6075611, at *7 (Bankr. D. Vt.  2018) (citing 11 U.S.C. § 362(c)(3)(C)(i)); In re Baker, 2020 WL 290650, at *3 (Bankr. D. Kan. 2020); In re Washington, 443 B.R. 389, 392 (Bankr. D. S.C. 2011);  In re Charles, 334 B.R. 207, 215-16 (Bankr. S.D. Tex. 2005) (citing 11 U.S.C. § 362(c)(3)(C)(i)).  To avoid this onerous presumption, Debtors must demonstrate the contrary: there has been a substantial change in their financial or personal affairs or the present case will be concluded with a confirmed plan they can perform.  On these issues, Debtors bear the burden of proof by a preponderance of evidence.  In re Furlong, 426 B.R. 303, 309 (Bankr. C.D. Ill. 2010).

If Debtors do not meet their burden, a presumption of bad faith arises.  Debtors then bear the burden of establishing good faith by clear and convincing evidence in order to obtain an extension of the automatic stay.  In re Goodrich, 591 B.R. 538, 547 (Bankr. D. Vt. 2018),

amended, 2018 WL 6975201 (Bankr. D. Vt. 2018) (citing <u>Collier on Bankruptcy</u> ¶ 362.06(3)(b) and Fed. R. Evid. 301 ("In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption.")).  In contrast, if a presumption of bad faith does not arise, then Debtors "'need only show that the current case was filed in good faith under the less demanding preponderance of the evidence standard.'" <u>Goodrich</u>, 591 B.R. at 547 (citing <u>Collier on Bankruptcy</u> ¶ 362.06(3)(b); <u>In re Pence</u>, 469 B.R. 643, 646 (Bankr. W.D. Va. 2012); <u>In re Thomas</u>, 352 B.R. 751, 754 (Bankr. D. S.C. 2006)).  Thus, whether a presumption of bad faith arises is crucial to the ultimate determination of the Motion.

The first way Debtors can avoid the presumption of bad faith is to demonstrate a substantial change in their financial or personal affairs since dismissal of the First Case.  With only five hours and eighteen minutes lapsing between the dismissal of the First Case and the filing of the Second Case, the Court cannot fathom any change in circumstances.  Debtors were unable to present evidence of a change – much less a substantial change – in their circumstances since the dismissal of the First Case.

Debtors advocate that the enactment of SBRA changed their legal rights under chapter 11 and constitutes the necessary substantial change in their financial or personal affairs.  They are mistaken.  The plain language of Section 362(c)(3)(C)(i)(III)[4] requires the substantial change take place after dismissal of the First Case, but SBRA was enacted and became effective during the First Case.  The change in Debtors' legal rights as a result of SBRA did not take place between

---

[4]"It is well established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'" <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534 (2004).

the dismissal of the First Case and filing of the Second Case; consequently, it cannot satisfy the conditions of Section 362(c)(3)(C)(i)(III).

Debtors' remaining avenue to avoid the presumption of bad faith as to all creditors under Section 362(c)(3)(C)(i)(III) is to provide the Court with reason to conclude the second case will result in a confirmed plan Debtors can perform. Section 362(c)(3)(C)(i)(III)(bb) asks the Court to determine whether the debtor is likely to confirm a plan and perform under that plan. In re Collins, 335 B.R. 646, 652 (Bankr. S.D. Tex. 2005). Three facts cause this Court to conclude it is unlikely a plan will be confirmed in this case that can be fully performed:

1.    The Court found in the First Case that the sixth amended plan was blatantly unfeasible based on the costs, penalties, and taxes associated with the liquidation of the Inherited IRAs. Debtors have not established these facts have changed between the First Case and the Second Case.

2.    Debtors failed to present any evidence of the terms of a proposed plan in the Second Case from which the Court could conclude it was likely confirmable and performable.

3.    Only five hours and eighteen minutes lapsed between the dismissal of the First Case and the filing of the Second Case, and Debtors admitted there had been no substantial change in their circumstances between the two cases which would suggest a plan could be confirmed as a result.

Accordingly, the Court finds that Section 362(c)(3)(C)(i)(III)(bb) remains unsatisfied and a presumption of bad faith arises as to all creditors. Thus, Debtors must prove they filed the Second Case in good faith by clear and convincing evidence.

-13-

## II.   **A PRESUMPTION OF BAD FAITH ARISES AS TO THE JACKS.**

Under Section 362(c)(3)(C)(ii), a presumption of bad faith in the Second Case filing as to the Jacks may also arise as a result of the Jacks Stay Motion and subsequent relief granted by the Court.   Section 362(c)(3)(C)(ii) provides that a presumption of bad faith arises as to a specific creditor if a debtor's prior case was dismissed either while the creditor's motion for relief from the automatic stay was pending or had been resolved by terminating, conditioning, or limiting the stay as to the actions of the creditor. 11 U.S.C. § 362(c)(3)(C)(ii); In re McKinnon, 378 B.R. 405, 412 (Bankr. S.D. Ga. 2007).   If the circumstances described in Section 362(c)(3)(C)(ii) are present and give rise to a presumption that the filing is in bad faith, that presumption exists only as to the specific creditor that moved for relief from the automatic stay under Section 362(d) in the prior bankruptcy case.   In re Warneck, 336 B.R. 181, 185 (Bankr. S.D. N.Y. 2006);   In re Acosta, 540 B.R. 308, 315 (Bankr. S.D. Tex. 2015) (citing 11 U.S.C. § 362(c)(4)(D)(ii)); In re Bronson, 2017 WL 3037449 (Bankr. S.D. N.Y. 2017); In re Benefield, 438 B.R. 709, 714 (Bankr. D. N.M. 2010); In re Baldassaro, 338 B.R. 178, 186 (Bankr. D. N.H. 2006).

The Jacks moved for relief from the automatic stay immediately after the First Case was filed, and the Jacks Stay Motion was granted in October 2018.   Accordingly, the presumption of bad faith arises under Section 362(c)(3)(C)(ii) as to the Jacks, and Debtors must prove by clear and convincing evidence that the Second Case was filed in good faith as to the Jacks.   McKinnon, 378 B.R. at 410-12.

-14-

### III.  DEBTORS DID NOT OVERCOME THE PRESUMPTIONS OF BAD FAITH BY CLEAR AND CONVINCING EVIDENCE.

The Second Case was "presumptively filed not in good faith" under Section 362(c)(3)(C); therefore, Debtors must rebut the presumption by clear and convincing evidence.  In re Kurtzahn, 337 B.R. 356, 363-64 (Bankr. D. Minn. 2006); Collins, 335 B.R. at 651.  The Bankruptcy Code "does not explain how the debtor might go about showing good faith in filing a bankruptcy petition."  In re Galanis, 334 B.R. 685, 691 (Bankr. D. Utah 2005).  Most bankruptcy courts have adopted a totality of the circumstances test to determine if good faith is established.  Galanis, 334 B.R. at 692 (citing In re Montoya, 333 B.R. 449 (Bankr. D. Utah 2005)).

The totality of circumstances test includes consideration of the following factors:

1.  The timing of the second petition;

2.  How the debts in the second case arose;

3.  Why the debtor's prior case was dismissed, including the debtor's conduct in that case;

4.  How the debtor's actions affected creditors who were stayed;

5.  The debtor's motive in filing the later petition and whether the Bankruptcy Code is being unfairly manipulated;

6.  Whether the debtor's circumstances have changed since the prior dismissal and what is the likelihood that the debtor will be able to properly fund a plan; and

7.  Whether the case trustee or creditors object to the motion to extend the stay.

1 Bankruptcy Law Manual § 7:45 (5th ed.) (citing In re Galanis, 334 B.R. 685 (Bankr. D. Utah 2005) (standard should be totality of circumstances; listing factors and following Gier v. Farmers State Bank of Lucas, Kansas (In re Gier), 986 F.2d 1326 (10th Cir. 1993)); In re Levens, 2007 WL 609844 (Bankr. W.D. Mo. 2007) (listing factors); In re Sarafoglou, 345 B.R. 19 (Bankr. D.

Mass. 2006) (listing factors); In re Montoya, 342 B.R. 312 (Bankr. S.D. Cal. 2006) (listing

factors); In re Tomasini, 339 B.R. 773 (Bankr. D. Utah 2006) (the test for good faith under

§ 362(c)(3) is totality of circumstances); Kurtzahn, 337 B.R. 356 (listing factors)).  See also

In re Ochoa, 540 B.R. 322, 327-28 (Bankr. S.D. Tex. 2015); In re Wright, 533 B.R. 222, 234-45

(Bankr. S.D. Tex. 2015).  These factors are not exhaustive and do not necessarily carry equal

weight; the "test remains whether the debtor is attempting to thwart creditors or whether the

debtor is making an honest effort to repay them to the best of debtor's ability."  1 Bankruptcy

Law Manual § 7:45 (5th ed.).  See also In re Goodrich, 591 B.R. 538, 548-49 (Bankr. D. Vt.

2018), amended 2018 WL 6975201 (Bankr. D. Vt. 2018) (citing In re Montoya, 333 B.R. 449,

458, 460 (Bankr. D. Utah 2005)).

Considering these factors in light of Debtors' conduct in the First Case and the Second

Case leads to the undeniable conclusion that Debtors have not filed for the legitimate purpose of

reorganizing their financial affairs.  Instead, the Second Case is nothing but a continuation of their

endeavor to thwart the Jacks' legal efforts to collect the Judgment without the cost and expense

of posting an appeal bond.  The Court's conclusions rest on the following analysis:

**The Timing of the Second Case**.

The First Case was dismissed on May 13, 2020, at 11:31 a.m.  Five hours and eighteen

minutes later, Debtors filed the Second Case.  The First Case was dismissed by entry of an agreed

order stating that "cause" existed under 11 U.S.C. § 1112(b) so as to avoid a hearing scheduled

for May 13, 2020, on UST's Dismissal Motion.  (The Court had invited the parties in interest to

file motions to dismiss following denial of confirmation of Debtors' sixth amended plan in the

First Case).

-16-

Moreover, neither Debtors nor Debtors' counsel advised counsel for UST or the Jacks that they contemplated filing the Second Case when advising UST and the Jacks that they would agree to a dismissal of the First Case for cause.[5]  While there was no obligation to provide such information, the Court considers it a fact that does not pass the "smell test" given the pendency of the "for cause" Dismissal Motion, the agreement immediately preceding the hearing on the Dismissal Motion to avoid the hearing, and the twenty months the Jacks had been stayed from collecting the Judgment in the First Case – a case that resulted in no confirmed plan notwithstanding numerous attempts.

### How the Debts in the Second Case Arose.

For the most part, the debts in the Second Case are the same debts that existed in the First Case, with the Jacks' Judgment debt constituting over 90% of the debt in both cases.  The only new debts in the Second Case are Debtors' state income taxes ($3,053.00) and federal income taxes ($5,627.00) for 2019.  Debtors inexplicably elected not to pay their 2019 tax obligations after dismissing the First Case notwithstanding having over $50,544.32 in their DIP account when the Second Case was filed.  Debtors did, however, pay Sisson $47,783.63 for the attorneys' fees and costs incurred in representing Debtors in the First Case.  Sisson's compensation effectively wiped out funds distributed from the Inherited IRAs during the First Case that were ordered to be held by Sisson in his trust account to protect the same from dissipation.

---

[5]The filing of the Second Case was clearly contemplated before the dismissal of the Second Case given the timing of Debtors' payment to Sisson of the filing fee and attorneys' fees for the Second Case on May 12, 2020.  UST Exhibit 4, p. 65, question 16.

-17-

**Why Debtor's First Case Was Dismissed.**

The First Case was dismissed for "cause" under Section 1112(b).  Although the Court did not have the opportunity to define the cause, the fact that cause existed was not in doubt following the confirmation hearing on the sixth amended plan in the First Case.  The sixth amended plan was not feasible under any circumstance proposed by Debtors (whose sole purpose in filing the First Case and the Second Case is to retain the Inherited IRAs and other non-exempt property).  Despite proposing six different plans in the First Case, Debtors never came remotely close to obtaining confirmation.  Additionally, Debtors violated direct orders of the Court by not placing the required minimum distributions from the Inherited IRAs in their counsel's trust account.  It was further discovered during the evidentiary hearing on the Motion that Debtors ignored another of heir obligations as debtors-in-possession in the First Case and paid their counsel in the State Court Action his attorney fees without first obtaining authorization from this Court.  Debtors paid him notwithstanding having received and agreed to comply with the UST guidelines for chapter 11 debtors.  UST Exhibit 18.

**How Debtors' Actions Affected Creditors Who Were Stayed.**

The Jacks have been unable to enforce the Judgment for over twenty months while the First Case pended, all without any payment or protections being afforded to them.  In fact, Debtors twice ignored a direct order to segregate and not spend the required minimum distributions from the Inherited IRAs.  And, upon the First Case being dismissed, Debtors quickly paid Sisson, their attorney in the First Case and the Second Case, without prior Court review and allowance of his fees, in the five hours and eighteen minutes between the dismissal of the First Case and the filing of the Second Case.  In doing so, Debtors effectively diminished the value of

their assets available to satisfy the Jacks' claim by nearly $50,000.00 using funds that this Court had ordered to be held in trust.

### Debtors' Motive in Filing the Second Case and Whether the Bankruptcy Code Is Being Unfairly Manipulated.

Debtors' desire was to take advantage of the new small business debtor provisions which took effect in February 2020. That course of action, in and of itself, is not objectionable. However, the Court seriously doubts that Debtors qualify as small business debtors. A "small business debtor" is defined as "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000[6] (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor." 11 U.S.C. § 101(51D). The key to identifying a small business debtor is, thus, whether more than 50% of the debtor's debts arose from commercial or business activities. Ventura, 615 B.R. at 13. In determining whether a debt is a business debt rather than a consumer debt, courts must look at the substance of the transaction and the purpose for incurring the debt to ascertain if it was incurred with the purpose of making profit. Ventura, 615 B.R. at 19 (citing In re Martin,, 2013 WL 5423954 (S.D. Tex. 2013) and In re Booth, 858 F.2d 1051, 1055 (5th Cir. 1988)).

The Jacks' claim, which comprises over 90% of Debtors' debt, does not arise from commercial or business activities of Debtors nor was it incurred for the purpose of making a

---

[6]The debt limitation in the definition of "small business debtor" was increased from $2,725,625.00 to $7,500,000.00 as part of the Coronavirus Aid, Relief, and Economic Security Act for a one year period

-19-

profit.  Rather, based on evidence previously presented to the Court in the First Case, the judgment arises from the Jacks' completion of the Second Floor of Debtors' residence for the Jacks to live in for the remainder of their lives.  The debt here arises solely from an attempt to provide care and security for aging parents, not from a business activity motivated by profit.[7]

Support for this conclusion can be found in Debtors' Schedules and Statement of Financial Affairs in the First Case which reflect no leases, business income, or rental business.  Quite simply, Debtors are improperly labeling themselves as small business debtors in an effort to qualify for the more favorable provisions of subchapter V of chapter 11, specifically the ability to avoid the limitations of the absolute priority rule in order to retain the Inherited IRAs and their other non-exempt assets while continuing to hold the Jacks at bay.

In the First Case, Debtors were repeatedly told to file a plan that complied with the absolute priority rule and repeatedly failed to do so.  When they finally filed a plan that appeared to comply with the absolute priority rule, the financial information and analysis contained in the fifth amended disclosure statement was revealed at the confirmation hearing to not be based in reality.  Debtors' own financial witness clearly established the lack of feasibility to fund a plan paying the Jacks in full.  Moreover, once the Court denied confirmation of the sixth amended plan, Debtors did not file any further plans from February 19, 2020, to the dismissal on May 13, 2020, during the entirety of which the Jacks were "stayed" from collecting their Judgment.

---

[7] If Debtors' motive was not to support their parents, then the only conceivable alternative motive is fraud as found by the jury in the State Court Action.

-20-

Debtors have masterfully manipulated the Bankruptcy Code for twenty months to serve their purpose of staying the Jacks' collection activities without the necessity of posting an appeal bond or being required to pay anything on the Jacks' Judgment debt.

### Whether Debtors' Circumstances Have Changed Since the Prior Dismissal and What Is the Likelihood Debtors Will Be Able to Properly Fund a Plan.

Only five hours and eighteen minutes lapsed between the dismissal of the First Case and the filing of the Second Case. Debtors failed to identify any changes in their circumstances during this short time. Certainly, the enactment of SBRA in February 2020 potentially changed their legal footing as chapter 11 debtors assuming they qualified as small business debtors. However, SBRA went into effect on February 19, 2020, three months prior to the dismissal of the First Case and certainly not in the interim period between dismissal of the First Case and the commencement of the Second Case. Further, Debtors utterly failed to present any evidence at the hearing on the Motion that indicated that they would be able to successfully fund a plan in the Second Case.

### Whether the Trustee or Creditors Object to the Motion to Extend the Stay.

Both UST and the Jacks, who hold over 90% of the debt, vehemently object to the Motion and to any extension of the automatic stay.

_____

These factors paint a picture of Debtors desperately and greedily holding on to non-exempt assets in the First Case under the guise of reorganizing at the sole expense of the Jacks. Debtors now seek to do the same thing all over again in the Second Case. Debtors fell far short of establishing their good faith by a preponderance of the evidence, much less the higher and more stringent clear and convincing evidence standard applicable herein. The Second Case was

-21-

filed in bad faith, and the automatic stay thus terminated thirty days after the Petition Date and will not be extended.

## IV.   NO CAUSE EXISTS TO EXTEND THE STAY.

Even if Debtors had rebutted the presumption of bad faith by clear and convincing evidence, which they did not, rebutting the presumption under Section 362(c)(3)(C) or establishing good faith under Section 362(C)(3)(B) is only the first step in a two step process. Baldassaro, 338 B.R. at 186-187 (citing In re Charles, 334 B.R. 207, 223 (Bankr.S.D.Tex.2005)) (explaining that a debtor's good faith may authorize an extension of the stay, but the statute does not mandate that the bankruptcy court extend the stay).  Once good faith is established, the movant must next establish, by a preponderance of the evidence, why the Court should exercise its discretion to extend the stay.  Baldassaro, 338 B.R. at 187.

Here, Debtors did not establish any reason for this Court to exercise its discretion to extend the stay – Debtors presented no evidence of the contents of a *confirmable* plan, Debtors appear to not qualify for subchapter V of chapter 11, and the Jacks have been stayed for more than twenty months without the protection of an appeal bond.  Thus, even if Debtors established their good faith, which they did not, the Court finds no basis in fact or law to exercise its discretion to extend the automatic stay in this case beyond thirty days after the Petition Date.

## CONCLUSION

For the reasons set forth above, the Motion is DENIED, and the automatic stay is not extended beyond thirty days after the Petition Date.

IT IS SO ORDERED.

# # #